UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Theresa Wamhoff-Mitro<br><br>   Plaintiff,<br><br>v.<br><br>GC Services, LP<br><br>   Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Theresa Wamhoff-Mitro, ("Theresa"), is a natural person who resided in Ft. Wayne, Indiana, at all times relevant to this action.

2. Defendant, GC Services, LP, ("GCS"), is Delaware Limited Partnership that maintained its principal place of business in Houston, Texas, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's TCPA claims because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

5. Pursuant to 28 U.S.C. §1391(b), venue is proper because Defendant maintains an office in this judicial district and collects debts throughout the state of Illinois.

**STATEMENT OF FACTS**

6. At all times relevant to this action, GCS collected consumer debts.

7. Before GCS began contacting Theresa, it and Theresa had no prior business relationship and Theresa had never provided express consent to GCS to be contacted on her cellular telephone.

8. GCS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

9. The principal source of GCS's revenue is debt collection.

10. GCS is a "debt collector" as defined by 15 U.S.C. §1692a(6).

11. As described, *infra*, GCS contacted Theresa to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

13. Theresa is a "consumer" as defined by 15 U.S.C. §1692a(3).

14. On several occasions, the dates of which will be determined through discovery, GCS willingly and knowingly used an automatic telephone dialing system to call Theresa on her cellular phone multiple times in violation of the TCPA.

15. On or around August 10, 2013, GCS began contacting Theresa on her cellular phone in connection with the collection of a debt.

16. GCS contacted Theresa on her cellular phone approximately nine times between August 10, 2013, and August 23, 2013.

17. GCS contacted Theresa on her cellular phone five times on August 19, 2013.

18. Each time Theresa answered the phone, GCS did not respond and terminated the call.

19. GCS harassed Theresa by calling Theresa excessively and not responding when Theresa answered the phone.

20. On August 19, 2013, Theresa, annoyed by the excessive hang-up calls from GCS, contacted GCS and spoke with a representative, Nicole Soto, ("Nicole").

21. During this communication, Nicole threatened Theresa by telling Theresa GCS had permission to garnish Theresa's wages and would put the order through if Theresa did not agree to a payment plan of $1,225 per month.

22. GCS has not garnished Theresa's wages.

23. GCS never intended to garnish Theresa's wages.

24. During this communication, Nicole also threatened Theresa by telling her GCS had permission to take Theresa's state and federal tax returns.

25. GCS has not taken Theresa's state and federal tax returns.

26. GCS never intended to take Theresa's state and federal tax returns.

27. During this communication, Theresa informed Nicole there was no way Theresa could pay $1,225 per month.

28. During this communication, Nicole attempted to degrade Theresa by asking why Theresa was working in sales when Theresa had a Master's Degree, thus implying it was Theresa's fault she couldn't pay the debt because Theresa did not have a better job.

29. During this communication, Theresa asked Nicole why Theresa had not heard from GCS previous to August 2013.

30. During this communication, Nicole informed Theresa GCS had sent multiple written communications to Theresa.

31. During this communication, when Theresa denied receiving any written communications from GCS, Nicole snapped at Theresa with something substantially similar to, "Oh, yes you have and you know it", implying Theresa was lying.

32. During this communication, Theresa also spoke with a GCS supervisor and asked why GCS never left voice messages, but just hung up.

33. During this communication, the supervisor informed Theresa if GCS left a voice message, GCS would be required to refrain from calling Theresa for three days.

34. On August 22, 2013, Theresa received a note from her supervisor at Theresa's place of employment regarding the calls from GCS stating something substantially similar to, "This woman keeps calling stating you won't return her calls and has left several messages on your cell. She keeps saying it is urgent and very important that you call her. It is definitely a personal call."

35. GCS's calls to Theresa's place of employment were very embarrassing to Theresa.

36. During these calls to Theresa's place of employment, GCS did not disclose it was a debt collector attempting to collect a debt.

37. At the time of the calls to Theresa's place of employment, GCS already had Theresa's location information.

38. GCS misrepresented to Theresa's supervisor that GCS left voice messages for Theresa, when in fact GCS, in an earlier communication with Theresa, indicated GCS didn't leave voice messages because if they did, GCS would need to wait three days before calling again.

39. On September 19, 2013, Hyslip & Taylor, LLC, LPA sent a written communication via Certified Mail to GCS notifying GCS that Theresa had retained Hyslip & Taylor, LLC, LPA to proceed with litigation against GCS for violation of the Fair Debt Collection Practices Act.

40. GCS received the Certified Mail written communication on September 23, 2013. (Exhibit A)

41. Despite GCS receiving written notification of attorney representation, on or around October 14, 17, 22, 26, 29 and November 5, 2013, GCS contacted Theresa on her cellular phone in connection with the collection of the debt.

42. GCS caused Theresa severe emotional distress.

43. GCS attempted to collect a debt from Theresa.

44. GCS violated the FDCPA.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

45. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

46. Defendant violated 15 U.S.C. §1692c(a)(2) by communicating with Plaintiff notwithstanding knowledge that Plaintiff was represented by an attorney with respect to the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

47. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

48. Defendant violated 15 U.S.C. §1692c(b) by communicating with a third party in connection with the collection of the debt without Plaintiff's consent.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

49. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

50. Defendant violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

51. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

52. Defendant violated 15 U.S.C. §1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

53. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

54. Defendant violated 15 U.S.C. §1692f by using unfair or unconscionable means to collect the debt.

## COUNT SIX

### Violations of the Telephone Consumer Protection Act

55. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

56. Defendant willingly and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Plaintiff's cellular telephone using both an automatic telephone dialing system without Plaintiff's prior express consent.

## JURY DEMAND

57. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

58. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k.

b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

d. For such other legal and/or equitable relief as the Court deems appropriate.

                              RESPECTFULLY SUBMITTED,

                              Hyslip & Taylor, LLC LPA


                              By:   /s/ Jeffrey S. Hyslip
                              One of Plaintiff's Attorneys

Date: November 7, 2013

Jeffrey S. Hyslip, Esq.
917 W. 18th St., Suite 200
Chicago, IL 60608
312-380-6110
jeffrey@lifetimedebtsolutions.com

7